# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JPB INSTALLERS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:17CV292 |
| | ) | |
| DANCKER, SELLEW & DOUGLAS, INC. d/b/a DS+D, CLARK CONSTRUCTION GROUP, LLC, and FIDELITY and DEPOSIT COMPANY OF MARYLAND, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on respective motions to dismiss for lack of personal jurisdiction, or alternatively, to transfer the action by Defendants Clark Construction Group, LLC ("Clark") and Fidelity and Deposit Company of Maryland ("Fidelity") [Doc. #11] and Defendant Dancker, Sellew, & Douglas, Inc. ("Dancker") [Doc. #15]. For the reasons that follow, both motions to dismiss for lack of personal jurisdiction are GRANTED.

I.

This case is about money allegedly owed from the provision of goods and services at a construction site in Washington, D.C. In August 2013, Plaintiff JPB Installers, LLC ("JPB"), a North Carolina company, began providing labor and materials for a project at the George Washington University Science and Engineering Hall. (Compl. ¶¶ 1, 19 [Doc. #4].) JPB served as a subcontractor for Dancker, a New York corporation with its principal office in New Jersey, which

served as a subcontractor for Hamilton Scientific, LLC ("Hamilton"), a Delaware company that has been dismissed from this action, which served as a subcontractor for Clark, a Maryland company and the general contractor for the project. (Id. ¶¶ 4, 7, 8, 22.) Fidelity, a Maryland corporation, served as a payment and performance surety for Hamilton. (Id. ¶¶ 9, 24.) In support of its claims of breach of contract against Dancker and unjust enrichment against all Defendants, JPB alleges that Dancker and now-dismissed Hamilton owe JPB for work performed and that Fidelity is financially responsible for Hamilton's debts to JPB. (Id. ¶¶ 33, 34, 36-69.) In response, all Defendants have moved to dismiss for lack of personal jurisdiction and, in the alternative, if the Court were not to dismiss the matter, to transfer the action.

II.

When a defendant asserts a Rule 12(b)(2) challenge to a court's personal jurisdiction, the question is one for the court and the plaintiff bears the burden to prove the existence of a ground for personal jurisdiction. Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). The burden "varies according to the posture of a case and the evidence that has been presented to the court." Grayson v. Anderson, 816 F.3d 262, 268 (4th Cir. 2016). Ultimately, a plaintiff must prove the existence of a ground for jurisdiction by a preponderance of the evidence. Id. (citing Combs, 886 F.2d at 676). However, when, as here, the court addresses the question of personal jurisdiction on the basis of the motion papers, supporting legal memoranda, relevant allegations of the complaint, and, if provided, supporting

2

affidavits,[1] the plaintiff has the burden of making a prima facie showing in support of jurisdiction. Id. (citing Combs, 886 F.2d at 676); Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014).

A plaintiff makes a prima facie showing in this context when it "present[s] evidence sufficient to defeat a motion for judgment as a matter of law." In re Polyester Staple Antitrust Litig., No. 3:03CV1516, 2008 WL 906331, at *7 (W.D.N.C. Apr. 1, 2008) (quoting Reese Bros., Inc. v. U.S. Postal Serv., 477 F. Supp. 2d 31, 36 (D.D.C. 2007)); see also Mattel, Inc. v. Greiner & Hausser GmbH, 354 F.3d 857, 862 (9th Cir. 2003) cited in Universal Leather, 773 F.3d at 561 (stating that a plaintiff makes a prima facie showing of personal jurisdiction by presenting facts that, if true, would support jurisdiction). Stated another way, a plaintiff makes a prima facie showing when there is evidence which a reasoning mind could accept as sufficient to support the proposition in question.

Absent an evidentiary hearing, the court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Combs, 886 F.2d at 676; see also Universal Leather, 773 F.3d at 560 (requiring the court to assume the plaintiff's version of the facts is credible and to construe any conflicting facts in the affidavits in the light most favorable to the plaintiff). However, "[t]he allegations of the complaint are taken as true only if they are not controverted by

---

[1] "[A] court has broad discretion to determine the procedure that it will follow in resolving a Rule 12(b)(2) motion." Grayson, 816 F.3d at 268.

3

evidence from the defendant." Vision Motor Cars, Inc. v. Valor Motor Co., 981 F. Supp. 2d 464, 468 (M.D.N.C. 2013) (citing Wolf v. Richmond Cty. Hosp. Auth., 745 F.2d 904, 908 (4th Cir. 1984)). When a defendant presents evidence that the court lacks personal jurisdiction, the plaintiff must present affidavits or other evidence to the contrary. Id. (citing Clark v. Remark, 993 F.2d 228 (Table), 1993 WL 134616, *2 (4th Cir. Apr. 29, 1993)). If both sides present evidence about personal jurisdiction, the court must resolve factual conflicts in the plaintiff's favor "for the limited purpose" of determining if the plaintiff has made a prima facie showing. Id. (citing Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 62 (4th Cir. 1993)).

A federal court may exercise personal jurisdiction over a non-resident defendant only if the forum state's long-arm statute authorizes the exercise of jurisdiction and the exercise of jurisdiction comports with the Fourteenth Amendment due process requirements. Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). North Carolina's long-arm statute, General Statute § 1-75.4, "is designed to extend jurisdiction over nonresident defendants to the fullest limits permitted by the Fourteenth Amendment's due-process clause." Church v. Carter, 380 S.E.2d 167, 169 (N.C. Ct. App. 1989); see also Christian Sci. Bd. of Dirs., 259 F.3d at 215 (stating same). Thus, the court's focus becomes whether the plaintiff has made a prima facie showing that the defendant's contacts with North Carolina satisfy constitutional due process. Universal Leather, 773 F.3d at 558-59.

4

Due process allows a court to exercise general or specific jurisdiction over a defendant. General jurisdiction exists over a foreign defendant when its "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." Int'l Shoe Co. v. Washington, 326 U.S. 310, 318 (1945); see also Helicopteros Nactionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.9 (1984) ("When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising 'general jurisdiction' over the defendant."). General jurisdiction requires a foreign defendant's "affiliations with the State [to be] so 'continuous and systematic' as to render [it] essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (citing Int'l Shoe Co., 326 U.S. at 317). "The Supreme Court has recently held that, aside from the 'exceptional case,' general personal jurisdiction over a corporation is usually only appropriate in the corporation's state of incorporation or principal place of business." Public Impact, LLC v. Boston Consulting Grp., Inc., 117 F. Supp. 3d 732, 738 (M.D.N.C. 2015) (citing Daimler AG v. Bauman, ___ U.S. ___, 134 S. Ct. 746, 761 n.19 (2015)).

"Specific jurisdiction is very different." Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty., ___ U.S. ___, ___ S. Ct. ___, 2017 WL 2621322, at *6 (June 19, 2017). It exists when the forum state exercises personal jurisdiction over the defendant "in a suit arising out of or related to the defendant's

5

contacts with the forum[.]" Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 414 n.8. "[T]here must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" Bristol-Myers Squibb Co., 2017 WL 2621322, at *7 (quoting Goodyear, 564 U.S. at 919). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." Id. (citing Goodyear, 564 U.S. at 931 n.6.)

To exercise specific jurisdiction over a defendant, due process requires that the court examine "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009) (quoting ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002)).

The inquiry into "purposeful availment . . . is grounded on the traditional due process concept of 'minimum contacts[.]'" Universal Leather, 773 F.3d at 559. "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)). It is not enough that a defendant's contacts with the forum state arise because the plaintiff is located there. See Worldwide Ins. Network, Inc. v. Trustway Ins. Agencies, LLC, No. 1:04CV906,

2006 WL 288422, at *5 (M.D.N.C. Feb. 6. 2006).  Instead, the defendant needs to have "purposely directed [its] activities at the state of North Carolina." See id. At its heart, the question is "whether the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there." Universal Leather, LLC, 773 F.3d at 559 (citation omitted) (alteration in original).

In the business context, courts analyze "various nonexclusive factors" to determine if a defendant has purposefully availed itself of the privilege of conducting activities in the state, including, but not limited to:

- whether the defendant maintains offices or agents in the forum state,
- whether the defendant owns property in the forum state,
- whether the defendant reached into the forum state to solicit or initiate business,
- whether the defendant deliberately engaged in significant or long-term business activities in the forum state,
- whether the parties contractually agreed that the law of the forum state would govern disputes,
- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship,
- the nature, quality and extent of the parties' communications about the business being transacted, [and]
- whether the performance of contractual duties was to occur within the forum[.]

Consulting Eng'rs Corp., 561 F.3d at 278 (citations omitted).  Although several of these factors involve the physical presence of a defendant in a forum state, "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, [the Supreme Court has] consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." Burger King

7

Corp., 471 U.S. at 475. On the other hand, "the Fourth Circuit has given great weight to the question of who initiated the contact between the parties." Pan-Am. Prods. & Holdings, LLC v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 682 (M.D.N.C. 2011); see also Universal Leather, LLC, 773 F.3d at 562 (noting that "the fact that a defendant initiated contact with the plaintiff in the forum state and repeatedly reached into the forum state to transact business during in-person visits there" "significantly" impacted the personal jurisdiction analysis) (internal quotations omitted).

Also relevant here, a resident's contract with a non-resident defendant is not by itself sufficient to establish sufficient minimum contacts with the forum state. Burger King Corp., 471 U.S. at 478. Because the contract is "but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction[,]" a court must evaluate "prior negotiations[,] contemplated future consequences, . . . the terms of the contract[,] and the parties' actual course of dealing[.]" Id. at 479.

The Fourth Circuit has "generally. . . concluded that a foreign corporation has purposefully availed itself of the privilege of conducting business in the forum state when the defendant 'substantially collaborated with a forum resident and that joint enterprise constituted an integral element of the dispute.'" Universal Leather, LLC, 773 F.3d at 560 (quoting Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd., 682 F.3d 292, 302 (4th Cir. 2012)). On the other hand, the Fourth Circuit has "typically . . . found such purposeful availment lacking

in cases in which 'the locus of the parties' interaction was overwhelmingly abroad.'" Id. (quoting Tire Eng'g & Distrib., LLC, 682 F.3d at 302).

Only after the plaintiff makes a prima facie showing of purposeful availment does the court need to evaluate the two remaining prongs of the jurisdictional analysis: whether the defendant's contacts with the forum state form the basis of the suit and whether other considerations confirm the appropriateness of the forum such as the burden on the defendant, the interest of the forum state in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the shared interests in obtaining efficient resolution, and the interests of the states in furthering substantive social policies. Consulting Eng'rs, 561 F.3d 278-79.

III.

Defendants Clark and Fidelity argue that the Complaint alleges no facts to establish either general or specific jurisdiction over them, because "[n]othing alleged in the Complaint indicates any tie to the state of North Carolina other than the citizenship of Plaintiff[;] [n]o events are alleged to have taken place in North Carolina, nor are there any allegations that any Defendants are citizens of North Carolina." (Mem. in Supp. of Mot. to Dismiss at 3 [Doc. #12].)

Against Clark, JPB alleges that "[u]pon information and belief," Clark "conduct[s] a significant amount of business within the State of North Carolina" and "[d]ue to the previously mentioned services, . . . Clark[] ha[s] established minimum contacts necessary for the state of North Carolina to exercise personal jurisdiction". (Compl. ¶¶ 14, 15.) Clark has presented no evidence challenging

these allegations; however, these allegations are conclusory and lack any factual support in the Complaint.  There are no factual allegations to support a conclusion that Clark, a Maryland company, maintained continuous, systematic, and substantial operations in North Carolina such that it is essentially at home in the state.

JPB also alleges that Clark is registered with the North Carolina Secretary of State, (id. ¶ 12), and argues that, as a result, Clark subjected itself to the general jurisdiction of this Court, (Mem. in Opp'n to Defs.' Mot. to Dismiss ("Br. in Opp'n") at 6.)  Long-standing precedent forecloses JPB's argument that Clark's registration to do business in North Carolina is sufficient to subject it to the general jurisdiction of this Court. See Public Impact, LLC, 117 F. Supp. 3d at 738.  In Ratliff v. Cooper Laboratories, Inc., 444 F.2d 745, 748 (1971), the Fourth Circuit Court of Appeals explained,

> We think the application to do business and the appointment of an agent for service to fulfill a state law requirement is of no special weight . . . .  Applying for the privilege of doing business is one thing, but the actual exercise of that privilege is quite another.  The principles of due process require a firmer foundation than mere compliance with the state domestication statutes.

See also Public Impact, LLC, 117 F. Supp. 3d at 738 (citing district courts within the Fourth Circuit applying Ratliff and finding that circuit law "forecloses Public Impact's argument that this court has general jurisdiction over BCG because it is registered to do business in this State").

JPB offers nothing further in support of the exercise of general jurisdiction over Clark than argument based solely upon information and belief. It argues that "Clark [is] responsible for providing labor and materials, including subcontractors, for construction projects that are believed to be located both inside and outside of the State of North Carolina and which require that [Clark] engage and supervise [its] various subcontractors." (Br. in Opp'n at 7.) "Upon information and belief, [Clark] repeatedly hired and supervised North Carolina individuals and entities on numerous projects which are believed to be both inside and outside of the State of North Carolina." (Id.) These unsupported arguments that Clark provides labor and materials for projects inside and outside of North Carolina and hired and supervised North Carolinians on projects inside and outside the state, along with JPB's allegations, fall short of a prima facie showing that Clark's business contacts with North Carolina make it essentially at home here. In short, this Court lacks general jurisdiction over Clark.

In support of the exercise of specific jurisdiction over Clark, JPB alleges in its Complaint that Clark is registered to do business in North Carolina and "[u]pon information and belief," that Clark "conduct[s] a significant amount of business within the State of North Carolina" and has, therefore, "established the minimum contacts necessary" for jurisdiction. (Compl. ¶¶ 12, 14, 15.) Although Clark has presented no evidence to the contrary, as above, there are no factual allegations to support the conclusory allegation that Clark conducts significant business in North Carolina, and registration to do business in the state is not, by itself, sufficient for

11

jurisdiction.  JPB has not alleged that Clark reached into North Carolina to solicit or initiate business, made in-person contact with JPB in North Carolina regarding their business relationship, maintains offices or agents here, or owns property in the state.  The factual allegations of their relationship describe JPB as Clark's third-tier subcontractor whose workers were supervised at the George Washington University work site by representatives from Clark, (id. ¶¶ 22, 26, 28), but there are no other allegations of the nature, quality, and extent of their communications about the business being transacted.

In its brief, JPB argues that "the solicitation, hiring and supervision of Plaintiff, a North Carolina limited liability company, is exactly the type of business in which [Clark is] engaged and for which [it has] become [a] domesticated foreign entity", and that "it is clear that [Clark has] purposefully and intentionally availed [itself] and assented to the jurisdiction of the State of North Carolina". (Br. in Opp'n at 11.)  However, there is no allegation (or evidence in support of JPB's argument) that Clark solicited JPB's business or hired JPB (its third-tier subcontractor), and the supervision by Clark of JPB took place in Washington, D.C.  It is not sufficient that JPB is located in North Carolina.  In sum, JPB has not made a prima facie showing that Clark purposefully availed itself of the privilege of doing business in North Carolina, so there is no need to analyze the other specific jurisdiction factors.  The Court does not have jurisdiction – general or specific – over Clark, and its motion to dismiss is granted.

In support of the exercise of general jurisdiction over Fidelity, JPB alleges that "Fidelity conduct[s] a significant amount of business within the State of North Carolina" and "[d]ue to the previously mentioned services, . . . Fidelity [has] established the minimum contacts necessary for the state of North Carolina to exercise personal jurisdiction". (Compl. ¶¶ 14, 15.) Fidelity has presented no contrary evidence, but, as above, these allegations are conclusory and lack any factual support in the Complaint. There are no factual allegations that Fidelity maintained continuous, systematic, and substantial operations in North Carolina such that it is essentially home here.

JPB also alleges that Fidelity is registered with the North Carolina Department of Insurance, (id. ¶ 13), and argues that, as a result, Fidelity has subjected itself to this Court's jurisdiction, (Br. in Opp'n at 6). However, as explained above, registration with the state to be able to do business is, itself, insufficient to support general jurisdiction.

In its brief, JPB argues that "Fidelity has approximately 796 agents licensed by the North Carolina Commissioner of Insurance to provide services within the State of North Carolina" and is itself licensed "to provide services in approximately 22 different lines of business". (Id. at 6-7, 11 (citing apparent print-outs of spreadsheets (Ex. D) and lines of business associated with Fidelity on the North Carolina Department of Insurance website (Ex. C).) "As such," JPB argues, "Defendant Fidelity does a significant volume of business within the State of North Carolina". (Id. at 11.) While this information provides some support for the

13

exercise of jurisdiction, the remainder of JPB's argument in support of general jurisdiction over Fidelity is without any support and is based on JPB's "belief". "Upon information and belief, each of these licensed agents are also physically located within the State of North Carolina, and approximately 24 of these agents are located within the City of Durham, North Carolina." (Id. at 7.) This falls short of evidencing continuous, systematic, and substantial business in North Carolina such that Fidelity is essentially at home here. JPB has not made a prima facie showing of general jurisdiction.

Similarly, the Court lacks specific jurisdiction over Fidelity. As it did with Clark, JPB alleges in the Complaint that "[u]pon information and belief", Fidelity is registered to do business in North Carolina, and "[u]pon information and belief", Fidelity "conduct[s] a significant amount of business within the State of North Carolina" and has, therefore, "established the minimum contacts necessary" for jurisdiction. (Compl. ¶¶ 12, 14, 15.) Fidelity has presented no evidence to the contrary, but, as above, there are no factual allegations to support the conclusory allegation that Fidelity conducts significant business in North Carolina. However, as previously noted, JPB has presented evidence that it claims shows 796 licensed Fidelity agents in North Carolina and registration to provide twenty-two lines of insurance business. (Br. in Opp'n at 11 (citing Exs. C & D).) This is some evidence that Fidelity has agents in North Carolina, has deliberately engaged in significant business in the state, and possibly has reached into North Carolina to solicit business. However, other factors do not support a finding of purposeful availment.

14

JPB has not alleged (or argued) that Fidelity initiated contact with JPB, reached into North Carolina to solicit JPB's business, made in-person contact with JPB in North Carolina regarding their business relationship, or owns property or maintains offices in North Carolina. There are no allegations of the nature, quality, and extent of communications between JPB and Fidelity about the business being transacted. Instead, the allegations of the nature, quality, and extent of the business relationship are that Fidelity, a Maryland corporation, contracted with Hamilton, a Delaware company, to serve as its surety for Hamilton's work at George Washington University where JPB worked as a subcontractor for Dancker which was a subcontractor for Hamilton. (Compl. ¶¶ 4, 7, 9, 19, 22, 23, 24.) These factors taken together do not support a finding that Fidelity purposefully availed itself of the privilege of conducting business in North Carolina.

However, even if JPB had made a prima facie showing of purposeful availment, this Court lacks specific jurisdiction over Fidelity because this suit does not arise out of or nor is it related to Fidelity's contacts with North Carolina. There is no allegation that any activity or occurrence associated with the suit against Fidelity took place in North Carolina. Instead, the unjust enrichment claim against Fidelity arises out of Hamilton's alleged failure to pay JPB for its work performed at the George Washington University project – in Washington, D.C. The only connection to North Carolina is JPB's citizenship and location, which are insufficient to support the exercise of jurisdiction over a foreign defendant. JPB

has failed to make a prima facie showing of general or specific jurisdiction over Fidelity. Fidelity's motion to dismiss is granted.

IV.

Just as Clark and Fidelity did, Dancker challenges the exercise of general and specific jurisdiction over it and parrots the arguments of Clark and Fidelity, supra at 9. (Mem. in Supp. of Mot. to Dismiss at 2-3 [Doc. #16].) In its Complaint, JPB alleges that Dancker is registered to do business in North Carolina, "[u]pon information and belief . . . conduct[s] a significant amount of business within the State of North Carolina", and "[d]ue to the previously mentioned services, . . . [Dancker has] established the minimum contacts necessary for" jurisdiction. (Compl. ¶¶ 10, 14, 15.) Not only is JPB's conclusory allegation that Dancker conducts a significant amount of business in North Carolina unsupported by facts, but, as explained above, registration to do business in North Carolina is also insufficient. Furthermore, the facts alleged about Dancker are about its business at the George Washington University site, not about continuous, systematic, and substantial operations in North Carolina. JPB alleges that it entered into two contracts with Dancker to provide labor and materials for a construction project at George Washington University. (Id. ¶ 19.) In turn, Dancker operated as a subcontractor for Hamilton, which was a subcontractor for Clark – all for work at the George Washington University site. (Id. ¶ 22.) Dancker, among others, has allegedly failed to pay JPB in full for the work completed at the George Washington University project. (Id. ¶¶ 33, 37-69.)

In its brief, JPB argues that Dancker is "responsible for providing labor and materials, including subcontractors, for construction projects that are believed to be located both inside and outside of the State of North Carolina and which require that [Dancker] engage and supervise [its] various subcontractors." (Br. in Opp'n at 7.) "Upon information and belief, [Dancker] repeatedly hired and supervised North Carolina individuals and entities on numerous projects which are believed to be both inside and outside of the State of North Carolina." (Id.) These unsupported arguments that Dancker provides labor and materials for projects inside and outside of North Carolina and hired and supervised North Carolinians on projects inside and outside the state, along with JPB's allegations, fall short of a prima facie showing that Dancker's business contacts with North Carolina are continuous, systematic, and substantial such that it is essentially at home here. The Court cannot exercise general jurisdiction over Dancker.

Likewise, the Court cannot exercise specific jurisdiction over Dancker. JPB alleges in its Complaint that Dancker is registered to do business in North Carolina, "conduct[s] a significant amount of business within the State of North Carolina", and "[d]ue to the previously mentioned services" has "established minimum contacts necessary for" jurisdiction. (Compl. ¶ 10, 14, 15.) As above, JPB's conclusory allegation that Dancker conducts significant business in North Carolina lacks any factual support, and registration to do business in the state is not, by itself, sufficient. Unfortunately for JPB, its other factual allegations do not lead to a finding of purposeful availment. As previously noted, JPB alleges that it entered

17

into two contracts with Dancker to provide labor and materials at the George Washington University project, but Dancker failed to pay JPB in full for its work. (Id. ¶¶ 19, 33.) Dancker operated as a subcontractor for Hamilton, which was a subcontractor for Clark, and, as a result, JPB took direction from Hamilton and Clark representatives on site. (Id. ¶¶ 22, 26, 28.) As explained earlier, these allegations show a connection between Dancker and Washington, D.C., not between Dancker and North Carolina. There are no allegations that Dancker reached into North Carolina to solicit or initiate business, deliberately engaged in significant or long-term business activities in the state, made in-person contact with JPB in North Carolina regarding their business relationship, contracted with JPB that North Carolina law would apply, or owns property or maintains offices or agents in the state. The allegations of the nature, quality, and extent of JPB's and Dancker's communications about the business being transacted include the existence of two contracts and Dancker's instruction to JPB that representatives from Hamilton and Clark would be supervising JPB on site. None of these allegations support a finding of purposeful availment.

In its brief, JPB argues that "the solicitation, hiring and supervision of Plaintiff, a North Carolina limited liability company, is exactly the type of business in which [Dancker is] engaged and for which [it has] become [a] domesticated foreign [entity]." (Br. in Opp'n at 11.) In addition, JPB argues that "[u]pon

18

information and belief, the agreements with [Dancker[2]] were accepted and became valid and binding within the boundaries of [sic] State of North Carolina because Plaintiff was physically within the boundaries of the State of North Carolina when it accepted the proposed terms and communicated such acceptance to [Dancker[3]]." (Id. at 11-12.) However, there is no support for these arguments that Dancker solicited JPB's business or, to the extent this is even argued, that it did so by reaching into North Carolina. Neither JPB's presence in North Carolina nor the existence of a contract between JPB and Dancker is sufficient. JPB has failed to make a prima facie showing that Dancker purposefully availed itself of the privilege of conducting business in North Carolina, and the Court need not analyze the other specific jurisdiction factors. Because this Court lacks both general and specific jurisdiction over Dancker, its motion to dismiss is granted.

V.

For the reasons stated herein, IT IS HEREBY ORDERED that Clark Construction Group, LLC's and Fidelity and Deposit Company of Maryland's Motion to Dismiss [Doc. #11] is GRANTED because this Court lacks personal jurisdiction

---

[2] In its Brief, JPB refers to having entered into agreements with "Defendants", referring to Dancker and Clark. (See Br. in Opp'n at 7-8.) However, JPB alleges breach of contract only against Dancker and has specifically alleged the existence of only two contracts – "Subcontract 14-00256" and "Subcontract 14-00127" – according to which it was employed by Dancker. (Compl. ¶¶ 20, 20.a., 20.b., 37-58.) As for Clark, JPB alleges that Dancker informed JPB that it "would be taking on-site direction from representatives of Defendant Hamilton and Defendant Clark", (id. ¶ 26), but there is no allegation of a contract between JPB and Clark.
[3] See supra n.2.

over these Defendants.  IT IS FURTHER ORDERED that Dancker, Sellew & Douglas, Inc.'s Motion to Dismiss [Doc. #15] be GRANTED because this Court lacks personal jurisdiction over this Defendant.  A judgment dismissing the case will be entered contemporaneously with this Order.

This the 6th day of July, 2017.

/s/ N. Carlton Tilley, Jr.<br>Senior United States District Judge